S




# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Marcos Vasquez Diaz<br>Alma Lawreen Diaz,<br><br>              Debtor(s). | Case No. RS 10-18846 MJ<br><br>Chapter 13<br><br>OPINION RE TAX REFUNDS IN CHAPTER 13 PLANS |

## FACTS

The debtors, Marcos Vasquez Diaz and Alma Lawreen Diaz ("Debtors"), filed their Chapter 13 petition on March 26, 2010, at which time Rod Danielson ("Trustee") was appointed chapter 13 trustee. Debtors filed their 2009 tax returns on April 30, 2010 and received their refund on or about June 2, 2010. Debtors listed in schedule B their 2009 expected tax refund of $4,000. Debtors also claimed the tax refund as exempt in Schedule C under C.C.P. § 703.140(b)(5), the wild card exemption. On March 3, 2011, Debtors filed a proposed chapter 13 plan ("the Plan") using the Central District of California mandatory plan form; the Plan was confirmed without objection. The Trustee submitted the

1

Confirmation Order, as is the common practice in the Riverside Division, and the Confirmation Order was entered on May 27, 2010.

The present dispute arises out of disparate treatment of tax refunds in the Plan and Confirmation Order. The Plan is silent regarding tax refunds while the Confirmation Order states, "in addition to regular monthly payments, all tax refunds are pledged into the plan." As a consequence of contradictory form documents, the aforementioned difference exists in all chapter 13 plans and confirmation orders in the Riverside Division.[1]

On July 7, 2011, the Trustee moved to dismiss Debtors' case for failure to turn over Debtors' 2009 tax refund. Debtors filed an opposition and a hearing was held on July 28, 2011. At the initial hearing Debtors' counsel and the Trustee presented arguments regarding the Code's treatment of tax refunds accrued on prepetition earnings. The Court asked Debtors' counsel and the Trustee to submit briefs on the issue. On September 8, 2011, the Court heard argument from both sides and took the matter under submission.[2]

## DISCUSSION

### I.     Effect of the Plan Confirmation Order.

A Plan Confirmation Order is a final order that is preclusive as to all issues that were justiciable at the time of plan confirmation. <u>United Student Aid Funds, Inc. v. Espinosa</u>, 130 S.Ct. 1367 (2010).

---

[1] The inclusion of the tax refund provision in the order predates the current chapter 13 Trustee, who merely continued the practice of his predecessor. Prior to the present controversies, the tax refund provision had not been vetted by contested motions.

[2] The hearing on the motion in this case was consolidated with hearings on the same issue in several other cases. This opinion will be appended to the Court's ruling in all similar cases.

2

### A. The Order Is Not Void Because It Did Not Violate Debtor's Due Process Rights.

A limited exception to the finality of an order arises under Rule 60(b), made applicable by Bankruptcy Rule 9024, which allows a party to seek relief from a final judgment under a limited set of circumstances. Gonzalez v. Crosby, 545 U.S. 524, 529 (2005). Rule 60(b)(4) authorizes the court to relieve a party from a final judgment if the judgment is void. Espinosa, 130 S.Ct. at 1376. A judgment is void only where it is premised on jurisdictional error or on a violation of due process that deprives a party of notice and an opportunity to be heard. Id.

The Debtors argue that the Plan Confirmation Order was so ambiguous that it deprived them of adequate notice. Debtors argue that the word "all" in the phrase "all tax refunds are pledged to the plan" is fatally ambiguous. Debtors point out that, taken literally, "all" would require Debtors to turn over every tax refund ever received by Debtors. The Trustee embraces this broad application of "all" and disagrees only with the assertion that it is fatally ambiguous. The Court agrees with the Trustee. The word "all," while broad, is not so ambiguous as to deprive the Debtors of adequate notice. Here, Debtors received actual notice of the entry of the Confirmation Order and its contents. If Debtors believed the inclusion of the tax provision was incorrect, then a motion for reconsideration for mistake would have been proper. See Rule 60(b)(1). Not surprisingly, however, the Court cannot find any case law to support a proposition that an order is void if it is overly broad. If that were the case, the court's power to create comprehensive orders would be significantly diminished.

3

B. **The Plan Confirmation Order Excludes PrePetition Tax Refunds.**

A bankruptcy judge has the power to interpret its own orders. In re Optical Technologies, Inc., 425 F.3d 1294, 1300 (8th Cir. 2005); See In re Conejo Enterprises, Inc., 96 F.3d 346 (9th Cir. 1996). The Court is persuaded that the term "all" in the Plan Confirmation Order refers to all tax refunds on income earned postpetition. The Court's interpretation is consistent with the Debtors' understanding at confirmation, as evinced by Debtors' exemption of their prepetition tax refund on Schedule C.[3] The Court also notes that the language included in the Plan Confirmation Order regarding turnover of taxes was not included in the Debtors' Proposed Plan, presented on the District's mandatory plan form, and that the Trustee drafted and submitted the Plan Confirmation Order. More importantly, the Court's interpretation is consistent with the law regarding *projected* disposable income and *future* earnings in sections 1322(a) and 1325(b), as discussed more thoroughly below. Any decision to the contrary would be anomalous; it would vest the Chapter 13 Trustee with unfettered discretion to seek contribution of all tax refunds, regardless of when those refunds were earned.

II.    **Treatment of Prepetition Tax Refunds under the Bankruptcy Code.**

As a preliminary matter, the Court's decision is not based on Debtors' argument that prepetition tax refunds are excluded from disposable income because they are exempted under state law.[4]

The Trustee asserts that the prepetition tax refund is captured by the Plan under sections 1322(a)(1) and 1325(b)(1)(B). The Trustee's argument hinges on the classification

---

[3] Although, as discussed below, the Court determines this is actually not an exemption question at all.
[4] See In re Hagel, 184 B.R. 793 (9th Cir. BAP 1995) (holding that social security benefits must be included in disposable income despite a debtor's right to exempt them under state law) (superseded by statute); In re Scholz, 447 B.R. 887 (9th Cir. BAP 2011) (affirming Hagel's reasoning). See also In re Waters, 384 B.R. 432, 436 (Bankr. N.D. W. Va. 2008).

4

of the tax refund as income.[5] However, the Supreme Court has held prepetition tax refunds are property and not income. Kokoszka v. Belford, 417 U.S. 642 (1974). The Court stated, "the income tax refund at issue in the present case does not relate conceptually to future wages and is not the equivalent of future wages for the purpose of giving the bankrupt a 'fresh start.' The payments refunded here were income tax payment withheld from petitioner prior to his filing for bankruptcy." Id. at 648. The Supreme Court premised this holding on its prior case Segal v. Rochelle, 382 U.S. 375, 380 (1966), where that "Court concluded that the refund was 'sufficiently rooted in the pre-bankruptcy past […] that it should be regarded as property […].'" The Ninth Circuit has similarly held that tax refunds are property. In re Feiler, 218 F.3d 948 (9th Cir. 2000). Even Congress adopted the Supreme Court's view when enacting the present Bankruptcy Code: "The result of Segal v. Rochelle, 382 U.S. 375 (1966), is followed, and the right to a refund is property of the estate." S.Rep. No. 989, 95th Cong., 2d Sess. 82. Under established precedent, therefore, tax refunds accrued on prepetition earnings but received postpetition are property, not income. They are "rooted in the pre-bankruptcy past," disqualifying them from classification as income. To dispel any doubt, the Court will address the Trustee's arguments.

Because the Code does not define "income," the Trustee asks the Court to adopt the Code's definition for "current monthly income" and apply it to sections 1322(a). The cardinal rule of statutory interpretation is to begin with the statutory language. Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992). The Court must presume that Congress says what it means in a statute and means what it says. Id. "Where the statutory language is plain, the 'sole function of the courts, at least where the disposition required by the text is

---

[5] The issue is whether the tax refund itself is income, not whether the prepetition wages, on which the refund accrued, are income.

5

not absurd, is to enforce it according to its terms.'" <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1 (2000) (citing <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 234, 241 (1989)).

Section 1322(a)(1) states that the plan shall:

> Provide for the submission of all or such portion of future earnings or *other future income* of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan. (emphasis added).

Section 1322(a)(1) uses the phrase "*future* income," not current monthly income. The Court must interpret the statute with deference to each word, including the word "future." Accordingly, the Court interprets section 1322(a)(1) to only include income earned postpetition, not tax refunds on prepetition earnings.

Even if the Court believed the tax refunds fell within the Code's definition of current monthly income, the Trustee would not be entitled to the entire tax refund. The Code defines "current monthly income" as:

> (10A)The term 'current monthly income' –
>
> (A)    means the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income, derived during the 6-month period ending on –
>
> (I) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income ...

Under this definition, the Trustee is only entitled to the portion of tax refund accrued on earnings from the six months prior to the commencement of the case, not the entire refund. But see <u>In re Forbish</u> 414 B.R. 400, 402 (Bankr. N.D. Ill. 2009) ("Because a debtor's income consists of CMI, it is not technically correct to say [...] that a debtor's tax refund constitutes "income" that must be devoted to the plan. The reason is that CMI is calculated

6

*before* withholding for taxes-indeed, before any kind of expense."). The Court's reluctance to ignore the word "future" in section 1322(a)(1) eliminates this awkward calculation.

The Trustee also asserts that the prepetition tax refund is captured by section 1325(b)(1)(B) which states:

> [...] the court may not approve the plan unless, as of the effective date of the plan –
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

The Trustee asserts that the prepetition tax refund is disposable income *received* during the commitment period and, therefore, should be applied to the plan. The Trustee is correct that the tax refund is received within the commitment period, but the Trustee has not explained why the refund is "projected disposable income." The term "disposable income" is defined by the Code in section 1322(b)(2) as:

> current monthly income received by the debtor ([...]) less amounts reasonably necessary to be expended.

As with the case with section 1322 above, the plain language of section 1325(b)(1)(B) is inconsistent with the Trustee's interpretation. Section 1325(b)(1)(B) uses the word "projected" to modify the term disposable income. Consequently, the plain meaning of the Code mandates the Trustee only capture projected or future income. See In re Heath, 182 B.R. 557 (9th Cir. BAP 1995) (holding that section 1325(b) does not require the inclusion of tax refunds received by the debtors as projected disposable income); In re Kuehn, 177 B.R. 671 (Bankr. D. Ariz. 1995) (holding that the trustee could not require debtors to turn over all tax refunds received during the plan without projecting whether there would be any

7

tax refunds). Accordingly, the Trustee is not entitled to tax refunds earned the year prior to filing bankruptcy.

## II. The Rationale for Pledging PostPetition Tax Refunds Into the Chapter 13 Plan Does Not Apply to PrePetition Tax Refunds.

The rationale for including tax refunds in the plan is to prevent debtors from overstating their tax withholdings. In re Schiffman, 338 B.R. 422, 427 (Bankr. D. Or. 2006). Tax refunds are included in disposable income because they are an overstatement of an expense, not because they fall within the definition of "current monthly income."

The calculation of disposable income is a two part analysis. First, the debtor adds up all of their "current monthly income" or all income over the six months prior to filing bankruptcy from all sources (pre-tax wages, investments, etc.). In re Forbish, 414 B.R. 400, 403 (Bankr. N.D. Ill. 2009) ("CMI consists of 'pre-tax income from all sources, similar to 'gross income' under the Internal Revenue Code.'"). Second, the debtor subtracts all necessary expenses over the same six month period, including taxes withheld on the debtor's pay stubs. In re Spraggins, 386 B.R. 221, 227 (Bankr. E.D. Wisc. 2008) ("Since a tax refund is not income, but a correction of the over-estimation of an expense, the Debtor here could propose to keep her tax refunds and include a deduction from current monthly income for payroll taxes actually incurred."). A tax refund is received only when the taxes withheld on the debtor's pay stub exceeds the amount owed to the IRS. In this situation the debtor has overstated the amount of taxes necessary to be deducted from their current monthly income. The overstated amount, or tax refund, must be paid back to the creditors because it was an overstatement of necessary expenses.[6]

---

[6] Below median debtors subtract expenses listed on debtors' Schedule J. Forbish, 414 B.R. at 403-04. Code section 1325(b)(3) instructs above median debtors to subtract expenses in accordance with § 707(b)(2)(A) and (B), allowing for a tax expense deduction from disposable income on Official Form 22C line 30.

8

A debtor's overstatement of prepetition taxes does not justify turnover of the overstated amount to the creditors because, unlike a postpetition refund, the debtor would not have been required to turn over the corollary increase in income had they not overstated their tax expense. The only relevance of a debtor's prepetition tax withholdings to disposable income is to use it as a "projection" of their postpetition tax withholdings.

The only circuit court to address the prepetition tax refund question directly was the Sixth Circuit in In re Freeman. 86 F.3d 478 (6th Cir. 1996). In Freeman, the debtor's plan required contribution of all tax refunds due to the debtors for a specific three-year period. Id. at 479. The debtors attempted to modify the plan when their tax refund on prepetition income was larger than they expected. Id. The debtors argued that the refund was exempt under state law, and therefore, not included as disposable income. Id. at 480-81. The court held that the tax refund was disposable income. Id. at 481. The court's only reason was that "disposable income under section 1325 is to be interpreted broadly in this Circuit." Id. Thereafter, the court qualified its holding by stating, "In this case, as a factual matter, the debtor had specifically identified that tax refunds should go to the plan [...]" Id.

Unlike the Sixth Circuit, the Ninth Circuit has not adopted a broad interpretation of "disposable income." In re Anderson, 21 F.3d 355, 358 (9th Cir. 1994). In Anderson the court rejected a chapter 13 trustee's certification that, in effect, required debtors to agree to pay all of their *actual*, not projected, income to the trustee during the life of the plan. Id. The court reasoned that, "We may not construe a statute so as to make any part of it mere surplusage." Id. at 358; U.S. v. Merhmanesh, 689 F.2d 822, 829 (9th Cir. 1982). Applying that reasoning here, the Court cannot construe sections 1322(a) and 1325(b) to not include the words "projected" and "future." The instant case can also be distinguished from Freeman in that, here, Debtors' proposed plan did not pledge tax refunds. Instead, the

9

Trustee included the tax refund provision in the Confirmation Order. In <u>Freeman</u>, the court was interpreting the debtor's own plan provision and did not separately focus on whether the refund was "income."

Despite the Ninth Circuit's decision in <u>Anderson</u>, the bankruptcy court in <u>In re Schiffman</u> held that prepetition tax refunds should be contributed into the plan. 338 B.R. 422. In <u>Schiffman</u> the debtor sought to remove the tax provision from the District of Oregon's chapter 13 plan form.[7] <u>Id.</u> at 425. The chapter 13 Trustee objected to the debtor's proposed modifications. <u>Id.</u> The court sustained the Trustee's objection, holding that both prepetition and postpetition tax refunds must be contributed to the plan. <u>Id.</u> at 427. The court reasoned that, "The rationale for including tax refunds received by the debtor during the life of the plan as future earnings is if a debtor is regularly receiving substantial tax refunds, the debtor is probably overwithholding, and consequently underestimating future income." <u>Id.</u> The court also noted that, "tax refunds are property of the estate [...] and Section 1327 allows such property not to be revested in the debtor, *if the plan so provides.*"

First, the Court again notes the procedural differences between the two cases. In <u>Schiffman</u> the tax refund provision was part of the chapter 13 plan form, whereas here, the provision was not part of the Plan, but was added by the Trustee in the Plan Confirmation Order. Second, the Court agrees with the Oregon court's reasoning in <u>Schiffman</u> as it applies to postpetition refunds. The court noted that if postpetition refunds are not

---

[7] Before Oregon's chapter 13 plan form was approved by the bankruptcy judges it was submitted in draft form for comments to various chapter 13 constituencies, including debtors' counsel, creditors' counsel, the chapter 13 trustees, the Internal Revenue Service and the Oregon Department of Justice. The chapter 13 plan form "was drafted to treat the interests of the various parties in chapter 13 proceedings evenhandedly. It covers issues commonly faced in chapter 13 cases, with flexibility to allow for the unique circumstances of the particular case." <u>Id.</u> See also <u>In re Spraggins</u>, 386 B.R. 221, 227 (Bankr. E.D. Wisc. 2008) (following "local custom in the District" by limiting debtors' contribution of their tax refund to 50% because of the "complexity and uncertainty inherent in determining actual taxes incurred [...]").

10

collected by the trustee then debtors will have an incentive to overwithhold, thereby keeping postpetition earnings from creditors. However, the Court disagrees with this rationale as it applies to prepetition tax refunds. The rationale would suggest that if a debtor overwithholds on prepetition taxes, then the debtor risks contribution of the prepetition tax refund simply because it was received postpetition. By contrast, if the debtor withholds nothing prepetition, then the debtor can save that tax expense in a savings account and exempt it. The Court sees no difference between money held in a savings account or by the IRS. Forbish, 414 at 403 fn.5 ("In essence, the debtor has used the tax-withholding scheme as a kind of savings account.").

To illustrate, suppose two identical debtors file their tax returns at the same time, one filing by mail and the other filing online. The debtor filing online receives his tax refund immediately and files for bankruptcy the next day. The debtor who filed by mail does not receive his tax refund for several weeks, filing bankruptcy in the interim. Under the Freeman and Schiffman decisions, the individual who filed online would keep his tax refund while the individual who filed by mail would forfeit that refund. The Court believes that the Code disfavors such arbitrary results.

III.  **Recommendation**

The Court recognizes that its decision imposes a burden on the Trustee with regard to capturing five years of tax refunds for five years in a plan, or three as the case may be. The Court, however, is satisfied that the Trustee has the ability to hold cases open until the final tax refund, accrued on earnings within the commitment period, is received by the Debtors. See In re Midkiff, 27 B.R. 383 (10th Cir. BAP 2002), aff'd, 342 F.3d 1194 (10th Cir. 2003). The Court also recognizes that certain debtors may prefer paying the prepetition tax refund in return for a discharge as soon as their final plan payment is

11

submitted. Accordingly, the Court recommends that the Trustee permit debtors to make an election to either contribute the prepetition tax refund to the plan or delay their discharge. This election could be in the form of an order provision which specifies by year the five (or three) years of refunds the debtor will pay into the plan.

IV. **Conclusion**

Tax refunds received by debtors postpetition but accrued on prepetition earnings are property, not income, and are not subject to turnover to the Chapter 13 Trustee.

Dated: October 3, 2011

MEREDITH A. JURY
United States Bankruptcy Judge

12

| In re: | CHAPTER: |
|---|---|
| Debtor(s). | CASE NUMBER: |

**NOTE TO USERS OF THIS FORM:**
1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that the attached order was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), I, deputy clerk who is making this entry; certify that service on all parties under Section II was completed, the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. The following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Rod (MJ) Danielson (TR)
notice-efile@rodan13.com

Gregory J Doan on behalf of Debtor Marcos Diaz
ecf@doanlaw.com

Ramesh Singh on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (RS)
ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** I deputy clerk who is making this entry; certify that service on all parties under Section II was completed, A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

| | |
|---|---|
| **Marcos Vasquez & Alma Lawreen Diaz**<br>12395 Cape Court<br>Moreno Valley, CA 92557 | JP Morgan Chase Bank Department<br>PO Box 201347<br>Arlington, TX 76006 |

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9021-1.1**

*January 2009*

| In re: | CHAPTER: |
|---|---|
| Debtor(s). | CASE NUMBER: |

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9021-1.1**

January 2009

| In re: | CHAPTER: |
|---|---|
| Debtor(s). | CASE NUMBER: |

**ADDITIONAL SERVICE INFORMATION** (if needed):

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9021-1.1**